IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JUAN MARIA NAVEJA DIEBOLD, | Civil Action No. 2:25-cv-01104-DCN |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| ARKONIK SVO, LLC, ARKONIK, LTD, SCOTT MCCABE AND GRANT SPICER, | |
| Defendants. | |

**NOW COMES**, Juan Maria Naveja Diebold ("JM Diebold"), through the undersigned counsel, and files the following complaint against Defendants, Arkonik SVO, LLC, Arkonik, LTD, Scott McCabe and Grant Spicer.

**SUBJECT MATTER/PERSONAL JURISDICTION**

1.  Defendants all agreed to sell or participate in the sale of JM Diebold's custom 1988 Land Rover Defender ("Land Rover") in Charleston County, South Carolina. As such, the court has personal jurisdiction over all Defendants.

2.  This is a dispute between parties from different states or countries and the amount in dispute is in excess of $75,000.00. Plaintiff invokes the subject matter jurisdiction of this Honorable Court under 28 U.S.C. §1332.

**PARTIES**

3.  Plaintiff JM Diebold is over eighteen years of age and a resident of the State of Florida.

-1-

4. Defendant Arkonik SVO, LLC is a limited liability corporation organized and existing under the laws of the state of South Carolina and doing business in Charleston County, South Carolina.

5. Defendant Arkonik, LTD is a business entity organized and existing under the laws of the United Kingdom and doing business in Charleston County, South Carolina.

6. Upon information and belief, Defendants Scott McCabe ("McCabe") and Grant Spicer ("Spicer") are over eighteen years of age (18), residents of the United Kingdom, employed by Arkonik, LTD and/or Arkonik SVO, LLC and doing business in Charleston County, South Carolina.

**FACTS**

7. JM Diebold is the owner of a 1998 Land Rover Defender 110 ("Land Rover") that was customized by Arkonik, LTD.  See the South Carolina Certificate of Title for the Land Rover signed over to JM Diebold by Arkonik SVO, LLC attached as Exhibit 1.

8. Upon delivery of the Land Rover, JM Diebold was not satisfied with the work performed on the Land Rover by Arkonik, LTD and/or Arkonik SVO, LLC.

9. The Land Rover was delivered to Arkonik, LTD and/or Arkonik SVO, LLC at their place of business on Clements Ferry Road in Charleston, South Carolina to be repaired.

10. An agreement was reached between McCabe, Spicer and Arkonik, LTD and JM Diebold that Arkonik, LLC would sell the Land Rover for JM Diebold in Charleston County, South Carolina.

11. Pursuant to that agreement, Arkonik SVO, LLC and Arkonik, LTD advertised the Land Rover for sale at their business location on Clements Ferry Road in Charleston, South Carolina.

12. On March 12, 2024, an agreement was reached with McCabe, Spicer and Arkonik, LTD and Arkonik SVO, LLC where JM Diebold agreed to sell the Land Rover to an undisclosed third party as long as JM Diebold received the net sum of $200,000.00 from the sale of the Land Rover.

13. Due to not receiving payment for the Land Rover, JM Diebold, on May 22, 2024, informed McCabe, Arkonik, LTD and Arkonik SVO, LLC that he was going to rescind the sale of the Land Rover if he was not paid the full amount he was owed from the sale of the Land Rover by September 1, 2024 and wanted the Land Rover returned to him.

14. On May 23, 2024, McCabe, Arkonik, LTD and Arkonik SVO, LLC agreed to rescind the sale of the Land Rover if JM Diebold did not receive full payment of his share of the sale price of the Land Rover and to return the Land Rover to JM Diebold's possession.

15. JM Diebold never signed over the South Carolina Certificate of Title attached as Exhibit 1 to anyone or any entity.

16. JM Diebold never authorized McCabe, Spicer, Arkonik, LTD and Arkonik SVO, LLC to transfer the over the South Carolina Certificate of Title for the Land Rover attached as Exhibit 1 to anyone or any entity.

17. On August 11, 2024, JM Diebold was paid the sum of $100,000.00 by Arkonik, LTD and/or Arkonik SVO, LLC without any explanation.

18. On August 14, 2024, JM Diebold was informed by McCabe, Arkonik, LTD and/or Arkonik SVO, LLC that he would receive the balance of his share of the sale price of the Land Rover by the end of September 2024.

19. On September 24, 2024, JM Diebold was paid $20,000.00 and requested an update from McCabe, Arkonik, LTD and/or Arkonik SVO, LLC. The following day he received an email from McCabe, Arkonik, LTD and/or Arkonik SVO, LLC that they were working on getting it all wrapped up as soon as possible.

20. On October 11, 2024, JM Diebold informed McCabe, Arkonik, LTD and Arkonik SVO,

LLC that if he did not receive the balance of his share of the sale price of the Land Rover by October 18, 2024 that he wanted the Land Rover returned to him.

21.     JM Diebold did not receive the balance of his share of the sale price of the Land Rover by October 18, 2024 and has demanded that the Land Rover be returned to him.

22.     JM Diebold has informed McCabe, Spicer, Arkonik, LTD and Arkonik SVO, LLC that he will return the funds paid to him, $120,000.00, by McCabe, Spicer, Arkonik, LTD and/or Arkonik SVO, LLC when the Land Rover is returned to him.

23.     JM Diebold still has title to the Land Rover.

24.     McCabe, Spicer, Arkonik, LTD and Arkonik SVO, LLC have refused to return the Land Rover to him.

25.     McCabe, Spicer, Arkonik, LTD and Arkonik SVO, LLC have refused to communicate with JM Diebold.

26.     As a result of Defendants' improper actions, JM Diebold incurred damages.

27.     As a result of Defendants' misrepresentations, JM Diebold incurred damages.

28.     As a result of Defendants' failure to return JM Diebold's Land Rover to him, JM Diebold has incurred damages in excess of $200,000.00.

29.     As a result of Defendants' failure to return JM Diebold's Land Rover to him, JM Diebold does not have possession or use of his Land Rover and does not know its whereabouts.

30.     In the alternative, if McCabe, Spicer, Arkonik, LTD and Arkonik SVO, LLC assigned the title to the Land Rover to alleged purchaser, the this was done without JM Diebold's permission or consent.

## CLAIMS

## FIRST CAUSE OF ACTION

## (BREACH OF CONTRACT AGAINST ARKONIK, LTD,)

31.     JM Diebold restates and realleges each and every allegation contained in the above numbered paragraphs 1 through 30.

32.     JM Diebold and Arkonik, Ltd. entered into a contract whereby Arkonik, Ltd. agreed to sell the Land Rover within a certain period of time.

33.     JM Diebold and Arkonik, Ltd. entered into a contract whereby Arkonik, Ltd. agreed to return the Land Rover to JM Diebold if the sale was not consummated within a certain period of time.

34.     JM Diebold and Arkonik, Ltd. entered into a contract whereby Arkonik, Ltd. agreed to return the Land Rover to JM Diebold if the alleged buyer of the Land Rover did not pay the full amount of the Land Rover's sale price within a certain period of time.

35.     JM Diebold and Arkonik, Ltd. entered into a contract whereby Arkonik, Ltd. agreed to pay JM Diebold the full amount of money from the sale of the Land Rover once the alleged buyer of the Land Rover paid the full amount of the Land Rover's sale price within a certain period of time. Once this occurred, JM Diebold agreed to assign his title of the Land Rover to the alleged purchaser of the Land Rover.

36.     Arkonik, Ltd. breached said contract by not returning the Land Rover to JM Diebold once he did not receive full payment of his share of the alleged sale proceed within a certain amount of time.

37.     Arkonik, Ltd. breached said contract by not returning the Land Rover to JM Diebold.

38.     Arkonik, Ltd. breached said contract by not paying the full amount of the alleged sale proceeds owed to JM Diebold.

39. In the alternative, Arkonik, Ltd. breached said contract by signing over the title to the Land Rover to the alleged purchaser without JM Diebold's authority or approval.

40. Due to Arkonik, Ltd.'s breach of said contract, JM Diebold suffered damages as alleged in this complaint.

## SECOND CAUSE OF ACTION

### (CONVERSION AGAINST ARKONIK, LTD, ARKONIK SVO LTD., GRANT SPICER AND SCOTT MCCABE)

41. JM Diebold restates and realleges each and every allegation contained in the above numbered paragraphs 1 through 30.

42. JM Diebold owns the Land Rover.

43. Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe have been in possession or control of the Land Rover.

44. JM Diebold have informed Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe have been informed to return the Land Rover to him.

45. Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe have refused to return the Land Rover to JM Diebold.

46. Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe current use of the Land Rover and refusal to return the Land Rover to JM Diebold is occurring without JM Diebold's permission.

47. In the alternative, Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe improperly signed over the title to the Land Rover to the alleged purchaser without JM Diebold's authority or approval and improperly delivered the Land Rover to the third-person.

48. JM Diebold has suffered damages due to Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe's conversion of the Land Rover. As such McCabe, Spicer, Arkonik, LTD and/or Arkonik

SVO, LLC are liable to JM Diebold for his damages.

## THIRD CAUSE OF ACTION

## (BREACH OF CONTRACT ACCOMPANIED BY FRAUDULENT ACT AGAINST ARKONIK, LTD)

49. JM Diebold restates and realleges each and every allegation contained in the above numbered paragraphs 1 through 30.

50. Under the terms of the JM Diebold and Arkonik, Ltd. contract, Arkonik, Ltd. agreed to sell the Land Rover within a certain period of time.

51. Under the terms of the JM Diebold and Arkonik, Ltd. contract, Arkonik, Ltd. agreed to return the Land Rover to JM Diebold if the sale of the Land Rover was not consummated within a certain period of time.

52. Under the terms of the JM Diebold and Arkonik, Ltd. contract, Arkonik, Ltd. agreed to return the Land Rover to JM Diebold if the alleged buyer of the Land Rover did not pay the full amount of the Land Rover's sale price within a certain period of time.

53. Under the terms of the JM Diebold and Arkonik, Ltd. contract, Arkonik, Ltd. agreed to pay JM Diebold the full amount of money he was owed from the sale of the Land Rover once the alleged buyer of the Land Rover paid the agreed sale price within a certain period of time.

54. Arkonik, Ltd. breached said contract by not returning the Land Rover to JM Diebold once he did not receive full payment of his share of the alleged sale proceed within a certain amount of time.

55. Arkonik, Ltd. breached said contract by not returning the Land Rover to JM Diebold.

56. Arkonik, Ltd. breached said contract by not paying the full amount of the alleged sale proceeds owed to JM Diebold.

57. After agreeing to return the Land Rover to JM Diebold if the full amount of the proceeds were not paid to JM Diebold, Arkonik, Ltd. had fraudulent intent in failing to return the Land Rover to JM Diebold, or by accepting the full amount of the sale proceeds from the potential buyer of the Land Rover and paying JM Diebold the amount he was owed.

58. After agreeing to return the Land Rover to JM Diebold if the full amount of the proceeds were not paid to JM Diebold, Arkonik, Ltd. committed a fraudulent act accompanying the breach of contract by failing to return the Land Rover to JM Diebold, or by accepting the full amount of the sale proceeds from the potential buyer of the Land Rover and not paying JM Diebold the amount he was owed.

59. In the alternative, after agreeing to return the Land Rover to JM Diebold if the full amount of the proceeds were not paid to him, Arkonik, Ltd. committed a fraudulent act accompanying the breach of contract by signing over title to the Land Rover to the alleged buyer or having its agent do so when it did not have authority.

60. Due to Arkonik, Ltd.'s breach of said contract accompanied by a fraudulent act, JM Diebold suffered damages as alleged in this complaint and is entitled to recover those damages from Arkonik, Ltd.

**FOURTH CAUSE OF ACTION**

**(BREACH OF DUTY OF CARE BY BAILEES AGAINST ARKONIK, LTD, ARKONIK SVO LTD., GRANT SPICER AND SCOTT MCCABE)**

60. JM Diebold restates and realleges each and every allegation contained in the above numbered paragraphs 1 through 30.

61. JM Diebold owns the Land Rover.

62. JM Diebold delivered the Land Rover to Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or

McCabe, creating a bailment.

63.     Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe agreed to assume care custody and control of the Land Rover in order to make a profit.

64.     Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe had a duty to safe guard the Land Rover and return it to JM Diebold in the same condition as it was received by them.

65.     Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe had a duty to protect the Land Rover, return it to JM Diebold when requested by him and, in the alternative, to not deliver the Land Rover to a third-party until JM Diebold was fully paid from any sale of the Land Rover.

66.     In the alternative, Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe should not have assigned the title to the Land Rover to the alleged buyer and/or deliver the Land Rover to the alleged buyer.

67.     JM Diebold has informed Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe to return the Land Rover to him.

68.     Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe have refused to return the Land Rover to JM Diebold.

69.     Arkonik SVO, LLC, Arkonik, LTD, McCabe and/or McCabe current use of and refusal to return the Land Rover to JM Diebold is without JM Diebold's permission.

70.     In the alternative, Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe improperly sold or delivered the Land Rover to a third-party who now has possession of the Land Rover.

71.     Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe's actions are in violation of their duty of care and are not the same degree of care which would be exercised by a person of ordinary care in the protection of his own property.

72. JM Diebold has suffered damages due to Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or Scott McCabe's actions with regard to the Land Rover, and Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe breached their duty and are liable to JM Diebold for his damages.

## FIFTH CAUSE OF ACTION

### (NEGLIGENCE AGAINST ARKONIK, LTD, ARKONIK SVO LTD., GRANT SPICER AND SCOTT MCCABE)

73. JM Diebold restates and realleges each and every allegation contained in the above numbered paragraphs 1 through 30.

74. Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe owed a duty to JM Diebold arising from their relationship with him and having possession of his property, the Land Rover.

75. Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe breached their duty to JM Diebold by the following acts and omissions:

    a. By failing to return the Land Rover to him;

    b. By handing over possession of the Land Rover to a third-party;

    c. By allowing the assignment of the title of the Land Rover to a third-party;

    d. By falling to make sure JM Diebold was properly paid for the Land Rover;

    e. By assigning the title of the Land Rover to a third-party; and

    f. Such other negligent acts and omissions as shall be proven herein.

76. As a direct and proximate result of Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe's said breach of their duty, JM Diebold suffered a loss, and Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe are liable to JM Diebold for his damages.

## FOR A SIXTH CAUSE OF ACTION

### (Negligent Misrepresentation)

77.     JM Diebold restates and realleges each and every allegation contained in the above numbered paragraphs 1 through 30.

78.     Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe made materially false representation to JM Diebold regarding the sale of his Land Rover.

79.     Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe had a pecuniary interest in making the statement in that they wished to sell or steal the Land Rover and make money from the sale of the Land Rover.

80.     Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe had a duty of care to see that truthful information was communicated to JM Diebold about the Land Rover.

81.     Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe breached their duty to JM Diebold by failing to tell him the truth about the sale of the Land Rover and payment of the sale price.

82.     In the alternative, Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe breached their duty to JM Diebold by illegally transferring ownership of the Land Rover and/or possession of the Land Rover to a third-party.

83.     JM Diebold justifiably relied on Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe's representations regarding the sale of the Land Rover.

84.     As a direct and proximate result of said Negligent Misrepresentation, JM Diebold suffered actual damages, loss of interest, and Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe breached their duty to JM Diebold and are liable to him for damages or relief as justice may require.

**FOR A SEVENTH CAUSE OF ACTION**

**(South Carolina Unfair Trade Practices)**

85. JM Diebold restates and realleges each and every allegation contained in the above numbered paragraphs 1 through 30.

86. Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe failed to properly handle the sale of the Land Rover, follow JM Diebold's instructions regarding the sale and return of the Land Rover to him, pay JM Diebold what he was owed from the sale of the Land Rover, and/or return the Land Rover to JM Diebold when he requested that it be returned to him.

87. In the alternative, Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe improperly transferred title to and ownership of the Land Rover to the alleged buyer.

88. Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe failed to adhere to the applicable statutes and regulations regarding regulation of the car sale industry.

89. Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe failed to use due care in handling the sale of the Land Rover.

90. Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe failed to adhere to the applicable statutes and regulations regarding regulation of the car sale industry, used unfair methods of competition and unfair or deceptive acts or practices in the conduct of its trade and commerce to mislead JM Diebold concerning the sale of the Land Rover.

91. On information and belief, said acts or practices are capable of repetition, adversely affecting the public interest.

92. On information and belief, there have been other occurrences of said acts or practices by Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe adversely affect the public interest.

93. As a direct and proximate result of Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe's conduct, JM Diebold suffered a direct loss.

94.     A person of ordinary prudence engaged in trade or commerce, in the exercise of due diligence, could have determined that such conduct violated the South Carolina Unfair Trade Practices Act, S.C. Code Ann.§ 39-5-10, et seq.

95.     The use and employment of said unfair or deceptive methods, acts, and practices by Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe were willful or knowing violations of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, et seq.

96.     Due to Arkonik SVO, LLC, Arkonik, LTD, Spicer and/or McCabe's willful and knowing violations, JM Diebold is entitled to treble damages and attorneys' fees against them, pursuant to S.C. Code Ann. § 39-5-140, *et seq*.

**WHEREFORE**, Plaintiff prays:

1. That judgment be entered herein awarding judgment in his favor;

2. That Defendants fully answer the aforesaid matters;

3. That a judgment be rendered in favor of Plaintiff and against Defendants for Plaintiff's damages;

4. That Plaintiff be fully compensated and awarded compensatory and general damages, together with his attorney's fees, costs, punitive damages and pre-judgment interest thereon;

5. That all claims be decided by a jury trial; and

6. That this Honorable Court award Plaintiff any other relief it deems necessary or that justice may require.

                                                BLUESTEIN LAW FIRM, P.A.

                                                By: s/S. Scott Bluestein
                                                S. Scott Bluestein / Federal No. 6981

        P.O. Box 22253  
        Charleston, SC 29413  
        266 W Coleman, Blvd., Suite 103  
        Mount Pleasant, SC 29464  
        Telephone:  843-577-3092  
        Facsimile:  843-577-3093  
        Email: scott@boatinglaw.us  

        ATTORNEY FOR PLAINTIFF

Mount Pleasant,  
South Carolina this 20th  
day of February 2025